IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| REBECCA L. VALENTINE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 05-801-JO |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| EQUIFAX INFORMATION SERVICES LLC, | ) | |
| a foreign corporation, | ) | |
| | ) | |
| Defendant. | ) | |

    Justin M. Baxter
    Michael C. Baxter
    BAXTER & BAXTER, LLP
    8835 S.W. Canyon Lane, Suite 130
    Portland, OR  97225-3429

     Attorneys for Plaintiff

    Jeffrey M. Edelson
    MARKOWITZ HERBOLD GLADE & MEHLHAF, PC
    1211 S.W. Fifth Avenue, Suite 3000
    Portland, OR  97204

Lewis P. Perling
Sidney S. Haskins, II
KING & SPAULDING, LLP
1180 Peachtree Street
Atlanta, GA  30309-3521

   Attorneys for Defendant

JONES, Judge:

Plaintiff brought this action against defendant Equifax Information Services, alleging that defendant negligently and willfully violated one or more of the requirements of the Fair Credit Reporting Act ("FCRA").  Following a jury trial, the jury returned a verdict in favor of plaintiff on her negligence claim and awarded her $200,000 in damages for emotional distress.  The jury found against plaintiff on her claim for willful violation and, consequently, did not award punitive damages.

The case is now before the court on plaintiff's motion for attorney fees and costs (## 83, 87).  Specifically, plaintiff seeks $154,773 in attorney fees and $13,904.95 in costs and expenses.  Of the claimed costs and expenses, plaintiff attributes $9,699.80 in expert witness fees due to "defendant's failure to admit certain of plaintiff's requests for admissions."  Plaintiff's Memorandum in Support, p. 10 (citing Fed. R. Civ. P. 37(c)).  For the reasons explained below, I grant plaintiff's motion for attorney fees and cost bill in the following sums:  $117,096.80 in attorney fees and $3,339.20 in costs and expenses.

## DISCUSSION

Defendant agrees that plaintiff is entitled to recover attorney fees and costs, but objects to both the proposed hourly rates and time incurred as excessive.  Additionally, defendant challenges plaintiff's claim for expert witness fees.

2 - ORDER

1.      Attorney Fees

Use of the lodestar method to calculate attorney's fees under a federal fee-shifting statute is proper. Tahara v. Matson Terminals, Inc., 511 F.3d 950, 955 (9th Cir. 2007); see also Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003). The lodestar method requires the court to multiply the number of hours reasonably expended on the litigation by a reasonable hourly rate. Tahara, 511 F.3d at 955; Hensley v. Eckerhart, 461 U.S. 424, 432 (1983). The party seeking fees bears the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and the rates claimed. Welch v. Metropolitan Life Insurance Company, 480 F.3d 942, 945-46 (9th Cir. 2007).

In calculating the number of hours reasonably expended, the court excludes hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434. In addition to setting the number of hours, the court must also determine a reasonable hourly rate, "considering the experience, skill, and reputation of the attorney requesting fees." Welch, 480 F.3d at 946 (quoting Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir.1986)). As the Ninth Circuit repeatedly has held, the determination of a reasonable hourly rate "'is not made by reference to the rates actually charged the prevailing party.'" Welch, 480 F.3d at 946 (quoting Mendenhall v. Nat'l Transp. Safety Bd., 213 F.3d 464, 471 (9th Cir.2000)). Rather, billing rates "'should be established by reference to the fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity.'" Id. (citation omitted).

Where, as here, the prevailing party's success is partial, this court may award limited fees. Park, ex rel. Park v. Anaheim Union High School Dist., 464 F.3d 1025, 1037 (9th Cir.

3 - ORDER

2006)(Beezer, J. concurring).  The Ninth Circuit explained in Park that

> [i]f * * * a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Once the district court has considered the amount and nature of damages awarded, the court may lawfully award low fees or no fees without reciting the 12 factors bearing on reasonableness * * * or multiplying the number of hours reasonably expended by a reasonable hourly rate.

Park, 464 F.3d at 1037-38 (quoting Farrar v. Hobby, 506 U.S. 103, 115 (1992)(internal quotation marks omitted)).

With those guidelines in mind, I turn to plaintiff's attorney fee request.  As mentioned, defendant objects both to plaintiff's counsel's claimed hourly rates and to the number of hours incurred as excessive.

      a.      <u>Hourly Rates</u>

Plaintiff seeks reimbursement of $325 per hour for Michael Baxter's services (a 1991 Oregon bar admittee), $260 per hour for Justin Baxter's time (a 1999 Oregon bar admittee), and $90 per hour for paralegal Kachelle Baxter's time.[1]  In support of the hourly rates, plaintiff points to several opinions from judges on this court in which similar hourly rates for comparable work have been approved.  See, e.g., Affidavit of Justin Baxter (Jan. 31, 2008), Exhibits 1 and 2.  Additionally, plaintiff submits the Declaration of Phil Goldsmith, a 1978 Oregon Bar admittee who specializes in class action and financial institution litigation and who periodically testifies as an expert witness on attorney fees.  In his declaration, Goldsmith opines, based on his personal knowledge of the Baxters' work and his familiarity with attorney fee rates on a national

---

[1] Defendant does not challenge Kachelle Baxter's hourly rate, and I find it to be reasonable.

4 - ORDER

and local level, that the requested hourly rates are reasonable considering the skill, experience, and reputations of the two Baxters.

Defendant contends that the proposed hourly rates "exceed[] the customary rate for such legal work in this jurisdiction." Defendant's Opposition, p. 4. In support of that statement, defendant points to the Oregon District Court "Message From the Court Regarding Attorney Fee Petitions," which states that the court uses the 2002 Oregon State Bar Economic Survey as its benchmark for determining a reasonable hourly rate. As Goldsmith explains in his declaration and as recognized by several judges on this court, however, the Oregon State Bar survey is based on data collected in 2001 and is of limited utility in determining current market rates. See Declaration of Phil Goldsmith, pp. 5-6.

Defendant also points to the Baxters' requested rates in another fee petition filed in 2005, in which Michael Baxter and Justin Baxter sought and received hourly rates of $235 and $195 per hour, respectively. See Kirkpatrick v. Equifax Information Services LLC, Civil No. 02-1197-MO (Order, May 23, 2005). Defendant asserts that because the two litigations overlapped between January 2005 and May 2005, the Baxters' present rates reflect an unreasonable 35 percent increase. In response, plaintiff notes that defendant did not challenge the Baxters' rates in Kirkpatrick, and the rates the Baxters sought remained the same throughout the three years of that litigation, from 2002 through 2005, and were not adjusted for inflation. Thus, plaintiff asserts, the hourly rates sought and approved in Kirkpatrick were below market rates.

I am persuaded that the Baxters' current rates are reasonable. Notably, defendant does not challenge Goldsmith's qualifications; nor does defendant submit *evidence*, expert or

5 - ORDER

otherwise, to support different hourly rates; indeed, defendant has not proposed alternative hourly rates. Defendant more or less stonewalled my attempt to obtain information concerning defendant's attorneys' billing rates, for comparison purposes, because, according to defendant, it retains counsel on a flat fee basis for all of its FCRA litigation. Defendant did specify trial counsel's hourly rate, $274.50 per hour for 32.2 hours, a rate that may or may not have been discounted, as plaintiff suggests.

In any event, the evidence of record before this court primarily consists of the Goldsmith declaration, in which he states that the Baxters' requested rates are in line with fees customarily charged in Portland, Oregon, by attorneys with similar skill and experience in commercial litigation during the relevant time frame. Defendant offers argument but no evidence to the contrary. I find Goldsmith's testimony to be persuasive; consequently, I conclude that Michael Baxter's and Justin Baxter's requested rates of $325 per hour and $260 per hour, respectively, are reasonable.

    b.    <u>Number of Hours Incurred</u>[2]

Plaintiff seeks reimbursement for a total of 613.6[3] hours, as follows:

| | |
|---|---|
| Michael Baxter | 177.8 hours |
| Justin Baxter | 340.7 hours |
| Kachelle Baxter | 95.1 hours |

---

[2] For unknown reasons, the billing records plaintiff submits do not give total hours for each attorney and paralegal separately, forcing the court to undertake the tedious task of separating the hours itself. In the future, counsel should avoid such an annoying mistake.

[3] <u>See</u> footnote 2. The court's total differs from plaintiff's calculation by .2 hours. In view of the plaintiff's failure to provide separate totals for each attorney and paralegal, the court will use its total of 613.6.

6 - ORDER

Defendant makes both specific and general objections to the claimed hours. Defendant specifically objects to certain time entries that are "block billing," and many time entries for lack of specificity. Defendant generally objects to the total number of hours as excessive; as including duplicative billing; and because of plaintiff's partial success.

I have reviewed plaintiff's billing records in great detail, and find as follows:

The JMB entries dated 2/6/06 and 2/27/06 (a total of 9.3 hours) constitute improper block billing and are stricken.

The JMB entry dated 5/21/07 (1.0 hours) is insufficiently explained and is stricken.

The JMB entries dated 6/14/07 and 9/28/07 (a total of 4.0 hours) pertain solely to plaintiff's claim for punitive damages, which she admits, and is stricken.

The JMB entry dated 10/2/07 (.2 hour) is excessive and is stricken.

The MCB entry dated 10/4/07 (1.5 hours) is insufficiently explained and is stricken.

The JMB and MCB entries dated 10/12/07 (6.5 hours each)(waiting for jury) are unreasonable and are stricken.

In addition, I have disallowed 5.5 hours of paralegal time spent running errands and faxing, scanning, and copying documents, because such time is administrative in nature.

After deducting the above hours, the revised totals are as follows:

| | |
|---|---|
| Michael Baxter | 169.8 hours |
| Justin Baxter | 319.7 hours |
| Kachelle Baxter | 89.6 hours |

With those adjustments, the lodestar amount is $146,371.00.

7 - ORDER

I turn now to the issue of partial success. Plaintiff's trial presentation, and therefore necessarily her trial preparation, placed significant emphasis on her claim for punitive damages and the need for the jury to send a message to defendant that would "shake the foundations." As noted, the jury rejected this claim. I find that because plaintiff emphasized her punitive damages claim but was unsuccessful in obtaining relief on that claim, an accross-the-board reduction of the lodestar is appropriate. A reduction will also address the duplication of effort that is evident in the billings records. Thus, in view of plaintiff's partial success and counsel's duplication of effort, I find a 20 percent reduction of the lodestar amount to be justified. Consequently, I award plaintiff the total sum of $117,096.80, a fee award that is reasonable in light of the jury verdict of $200,000.

2.  Claim for Expert Witness Fees

Plaintiff seeks an award of $9,699.80 in expert witness fees incurred, according to plaintiff, as a result of defendant's failure to admit certain of plaintiff's requests for admission.[4] Fed. R. Civ. P. 37(c)(2), the authority for plaintiff's request, provides in relevant part:

> If a party fails to admit what is requested under Rule 36 and if the requesting party later proves a document to be genuine or the matter true, the requesting party may move that the party who failed to admit pay the reasonable expenses, including attorney's fees, incurred in making that proof. The court must so order unless:
>
> (A)    the request was held objectionable under Rule 36(a);

---

[4] The requests were that in the two years prior to filing of the complaint, defendant: sold inaccurate information regarding plaintiff; did not follow reasonable procedures to assure the maximum possible accuracy of the information in reports concerning plaintiff; did not provide all relevant information it received from the consumer regarding plaintiff's disputes to the source of the disputed information when it reinvestigated plaintiff's disputes; did not comply with all its own procedures in handling plaintiff's disputes, and on at least one occasion, failed to comply with at least one provision of the Fair Credit Reporting Act. See Plaintiff's Memorandum, pp.10-11.

8 - ORDER

(B)   the admission sought was of no substantial importance;

(C)   the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or

(D)   there was other good reason for the failure to admit.

Here, plaintiff served defendant with the requests for admission at issue in July 2006, over a year before trial. Defendant responded in September 2006. Plaintiff did not challenge defendant's response to the requests, and the expert, Evan Hendricks, did not begin work on the case until June 2007. Hendricks' testimony at trial covered many more topics other than the subject matter of the denied requests; indeed, plaintiff's own argument underscores that she was able to elicit the necessary testimony to rebut defendant's denials from witness Alicia Fluellen, one of defendant's own representatives. Plaintiff's Memorandum, pp. 11-12. Further, it appears that plaintiff's counsel routinely use experts, including Hendricks, in their FRCA cases, thus belying the claim that the expense of Hendrick's testimony was incurred only to establish the facts defendant refused to admit. See Fed. R. Civ. P. 37(c)(2).

In any event, as applicable here, the "true test under Rule 37(c) is not whether a party prevailed at trial but whether he acted reasonably in believing that he might prevail." Marchand v. Mercy Medical Center, 22 F.3d 933, 937 (9th Cir. 1994)(internal quotations and citation omitted); Washington State Dept. of Transp. v. Washington Natural Gas Co., Pacificorp, 59 F.3d 793, 805-806 (9th Cir. 1995). Although the call is a close one, having observed the hard fought battle between the parties at trial, I am persuaded that defendant had reasonable grounds to believe it could prevail, and indeed, defendant did prevail on plaintiff's most significant claim, for punitive damages.

Consequently, I exercise my discretion to deny plaintiff's request for expert witness fees. <u>Washington State</u>, 59 F.3d at 805 (denial of fees under Rule 37(c) reviewed for abuse of discretion).

3.    <u>Bill of Costs</u>

Plaintiff seeks $3,339.20 in costs and expenses.[5] Defendant has not objected to the cost bill (with the exception of expenses associated with Hendricks), and I find the claimed costs and expenses to be reasonable and appropriate. Accordingly, I award plaintiff costs and expenses in the sum of $3,339.20.

## CONCLUSION

Plaintiff's motion for attorney fees and cost bill (## 83, 87) are granted in part and denied in part and I award the following sums: $117,096.80 in attorney fees and $3,339.20 in costs and expenses. Any other pending motions are denied as moot.

DATED this 22nd day of February, 2008.

    /s/ Robert E. Jones
ROBERT E. JONES
U.S. District Judge

---

[5] Plaintiff states in her memorandum that she seeks $13,904.95 in costs and expenses. Deducting the $9,699.80 in disallowed expert witness fees from that figure leaves $4,205.15, not $3,339.20, and is a mystery number plaintiff has not explained. Consequently, I award only the amounts set forth in the cost bill.

10 - ORDER